

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**WASHINGTON, D. C.  20001**

Date: 11-16-2017

The Honorable Angela Caesar, Clerk
United States District Court for the District of Columbia
3rd & Constitution Avenue, Washington, D.C.  20001

**In Re: Micheal Milles vs. Schmidt Baking Company, Inc.**

**Civil Action Number: 17-CA-006131**          **U.S. District Number: 17cv2331**

Dear Ms. Angela Caesar:

Transmitted herewith are all of the pleadings filed in the above captioned case pursuant to a Petition for Removal Filed on November 6, 2017.  A certified copy of the docket entries is also enclosed.

Please acknowledge receipt of our file on the duplicate copy of this letter, and return it to this Court.

Sincerely,

Joy Jefferson, Branch Chief
Civil Actions Branch

By: /s/ *Aletre Barnett*

CRTR5925                                        Summary

| Case Number | Status | Judge |
|---|---|---|
| 2017 CA 006131 B | Closed | PAN, FLORENCE Y |

| In The Matter Of | Action |
|---|---|
| MILLES, MICHEAL  Vs. SCHMIDT BAKING COMPANY, INC. | Complaint for Employment Discrimination (Non-MPA) Filed |

| Party | | Attorneys |
|---|---|---|
| MILLES, MICHEAL | PLNTF | POWELL, Mr BRUCE H H |
| SCHMIDT BAKING COMPANY, INC. | DFNDT | JACKSON, AMBER |

| Opened | Disposed | Case Type |
|---|---|---|
| 08/31/2017 | Removal-Notice of Removal To USDC | Civil II |

Comments:

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr     Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 1 | 11/16/17 | Notice of Hearing Mailed Next Business Day<br><br>Notice Of Removal<br>Sent on:  11/16/2017  11:40:19.91 | 0.00 | 0.00 |
| 2 | 11/06/17 | Notice of Removal to USDC for the District of Columbia. 17cv2331 | 0.00 | 0.00 |
| 3 | 11/06/17 | Event Resulted:<br>The following event: Initial Scheduling Conference-60 scheduled for 12/15/2017 at 9:30 am has been resulted as follows:<br><br>Result: Event Not Held Case Dismissed Judge: PAN, FLORENCE Y    Location: Courtroom 415 | 0.00 | 0.00 |
| 4 | 11/06/17 | Additional eFiling Document to Notice of Filing of Removal Filed. Submitted 11/06/2017. ts. | 0.00 | 0.00 |
| 5 | 11/06/17 | Notice of Filing of Removal Filed. Submitted 11/06/2017. ts. Attorney: JACKSON, AMBER (1026744) SCHMIDT BAKING COMPANY, INC. (Defendant); | 0.00 | 0.00 |

A TRUE COPY
TEST:
Clerk, Superior Court of
the District of Columbia
By _____
Deputy Clerk

11/16/2017

CRTR5925                                                Summary

2017 CA 006131 B   MILLES, MICHEAL  Vs. SCHMIDT BAKING COMPANY, INC.

| No. | Date of | Pleadings Filed, Orders and Decrees<br>Journal Book-Page-Nbr     Ref Nbr | Amount Owed/<br>Amount Dismissed | Balance Due |
|-----|---------|---|---|---|
| 6 | 10/31/17 | Case Reviewed for Entry of Default;<br>Affidavit at Issue- Affidavit states<br>that defendant was served on<br>10-02-2017. However, a filing docketed<br>on 10-18-2017 states that service date<br>is incorrect. Clerk is unable to<br>determine if service is sufficient.<br>SCHMIDT BAKING COMPANY, INC.<br>(Defendant); | 0.00 | 0.00 |
| 7 | 10/19/17 | Order Granting Plaintiff's Motion for<br>Pro Hac Vice Admission of Attorney<br>Benjamin L. Davis, III, Esq. signed by<br>J/Pan on October 19, 2017. Submitted<br>10/19/2017 16:59. kd | 0.00 | 0.00 |
| 8 | 10/19/17 | Order Granting Motion to Admit<br>Attorney BENJAMIN L. DAVIS III Pro Hac<br>Vice Entered on the Docket-SIGNED BY<br>JUDGE FLORENCE PAN, E-FILED,  E-SERVED<br>& MAILED 10/19/17. MWB | 0.00 | 0.00 |
| 9 | 10/18/17 | Status Report: Notice Regarding<br>Service Filed. Submitted 10/18/2017<br>16:00 jhcs.<br>Attorney: POWELL, Mr BRUCE H H (478697)<br>MICHEAL MILLES (Plaintiff); | 0.00 | 0.00 |
| 10 | 10/18/17 | Notice of Entry of Appearance Filed.<br>Submitted 10/18/2017 14:42. jd<br>Attorney: POWELL, Mr BRUCE H H (478697)<br>MICHEAL MILLES (Plaintiff); | 0.00 | 0.00 |
| 11 | 10/13/17 | Motion to Admit Attorney Pro Hac Vice<br>of Benjamin L. Davis, III Filed.<br>submitted 10/13/2017 08:49. ksc<br>Attorney: LEONARD, ROBERT J (1031023)<br>MICHEAL MILLES (Plaintiff);  Receipt:<br>380754  Date: 10/17/2017 | 20.00 | 0.00 |
| 12 | 10/11/17 | Proof of Service<br>    Method     : Service Issued<br>    Issued     : 09/06/2017<br>    Service    : Summons Issued<br>    Served     : 10/02/2017<br>    Return     : 10/11/2017<br>    On         : SCHMIDT BAKING COMPANY,<br>INC.<br>    Signed By : PATTI BERKEY<br><br>    Reason    : Proof of Service<br>    Comment   :<br><br>    Tracking #: 5000193907 | 0.00 | 0.00 |

CRTR5925                                    Summary

2017 CA 006131 B   MILLES, MICHEAL  Vs. SCHMIDT BAKING COMPANY, INC.

| No. | Date of | Pleadings Filed, Orders and Decrees Journal Book-Page-Nbr    Ref Nbr | Amount Owed/ Amount Dismissed | Balance Due |
|---|---|---|---|---|
| 13 | 10/11/17 | Affidavit of Service of Summons & Complaint on Schmidt Baking Company Inc. Filed. submitted 10/11/2017 13:27. tds Attorney: LEONARD, ROBERT J (1031023) SCHMIDT BAKING COMPANY, INC. (Defendant); | 0.00 | 0.00 |
| 14 | 09/07/17 | Complaint Package eServed | 0.00 | 0.00 |
| 15 | 09/06/17 | Issue Date:  09/06/2017 Service:  Summons Issued Method:  Service Issued Cost Per:  $  SCHMIDT BAKING COMPANY, INC. 601 South Caroline Street Suite 200 BALTIMORE, MD   21231 Tracking No: 5000193906  SCHMIDT BAKING COMPANY, INC. 650 South Exeter Street Suite 200 BALTIMORE, MD   21202 Tracking No: 5000193907 | 0.00 | 0.00 |
| 16 | 09/06/17 | Initial Order and Addendum Issued (60 Days)  Initial Order-60 Days Sent on:  09/06/2017  14:28:45.60 | 0.00 | 0.00 |
| 17 | 09/06/17 | Event Scheduled Event: Initial Scheduling Conference-60 Date: 12/15/2017    Time: 9:30 am Judge: PAN, FLORENCE Y    Location: Courtroom 415 | 0.00 | 0.00 |
| 18 | 08/31/17 | eComplaint. Filed. Submitted. 08/31/2017 14:02. ncv. Attorney: LEONARD, ROBERT J (1031023) MICHEAL MILLES (Plaintiff); | 0.00 | 0.00 |
| 19 | 08/31/17 | Complaint for Employment Discrimination (Non-MPA) Filed Receipt: 377693  Date: 09/06/2017 | 120.00 | 0.00 |

Totals By:  Cost
            Information

                                            140.00          0.00

CRTR5925                                          Summary

2017 CA 006131 B    MILLES, MICHEAL  Vs. SCHMIDT BAKING COMPANY, INC.

                                                          0.00              0.00

                         *** End of Report ***

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHEAL MILLES** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **Individually and On Behalf of Other** | * |
| **Similarly Situated Individuals** | * |
| | * |
| **v.** | * **Civ. Case No.: 2017 CA 006131 B** |
| | * |
| **SCHMIDT BAKING COMPANY, INC.** | * |
| | * |
| **Defendant.** | * |
| | * |
| *   *   *   *   *   * | *   *   *   *   *   *   * |

## NOTICE OF FILING OF REMOVAL

Please take note that, on November 6, 2017, Defendant, Schmidt Baking Company, Inc.,

filed a Notice of Removal of the above-captioned case, pursuant to 28 U.S.C. §§ 1331, 1441, and

1446, removing this action from the Superior Court of the District of Columbia to the United

States District Court for the District of Columbia. A copy of Defendant's Notice of Removal is

attached hereto (without exhibits) as **Exhibit A**.

Please take further note that, pursuant to 28 U.S.C. § 1446, the filing of the Notice of

Removal with the United States District Court, together with this Notice of Filing of Removal,

effects the removal of the action. This Court may proceed no further unless and until the case

has been remanded by the United States District Court.

Date: November 6, 2017

Respectfully submitted,

   /s/ Kathleen Pontone
Kathleen Pontone, DC Bar No. 328393
Amber N. Jackson, DC Bar No. 1026744
Miles & Stockbridge P.C.

100 Light Street
Baltimore, MD 21202
Telephone: (410) 385-3757
Email: kpontone@milesstockbridge.com
Email: ajackson@milesstockbridge.com
Facsimile: (410) 385-3700

**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 6, 2017, a copy of the foregoing Notice of Filing of

Removal was served by electronic means through CaseFileXpress filing system to:

Robert J. Leonard, Esq.
rleonard@nichollaw.com
Benjamin L. Davis, III, Esq.
bdavis@nichollaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

**Attorneys for Plaintiff**

/s/ Amber N. Jackson
Amber Jackson

4825-2582-4851, v. 1

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| MICHEAL MILLES | * | |
|---|---|---|
| | * | |
| Plaintiff, | * | |
| | * | |
| **Individually and On Behalf of Other** | * | |
| **Similarly Situated Individuals** | * | |
| | * | |
| v. | * | **Civ. Case No.: 17-2331** |
| | * | |
| SCHMIDT BAKING COMPANY, INC. | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### NOTICE OF REMOVAL

Defendant, Schmidt Baking Company, Inc. ("Schmidt"), by and through undersigned counsel, hereby provides notice that it is removing this action from the Superior Court of the District of Columbia, in which court the case is currently pending, to the United States District Court for the District of Columbia. In support thereof, Schmidt states as follows:

1.      On or about August 31, 2017, Plaintiff Micheal Milles ("Plaintiff") initiated the instant action by filling a two-count complaint in the Superior Court of the District of Columbia. Schmidt was served on October 16, 2017. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders filed by or served upon Schmidt to date are attached collectively to this Notice as **Exhibit A and Exhibit B**.

2.      A Notice of Filing of Removal will be filed with the Superior Court of the District of Columbia, a copy of which is attached hereto as **Exhibit C**.

3.      Pursuant to 28 U.S.C § 1446(b), this notice of removal is timely in that it is filed within thirty (30) days of Schmidt's receipt of service of the initial pleading setting forth the

cause of action and claim for relief upon which the aforesaid action is based.[1]

4.      As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 because this Court has subject matter jurisdiction over the case pursuant to the Court's federal question jurisdiction under 28 U.S.C. § 1331.

## I.      Background

5.      On August 31, 2017, Plaintiff filed this purported class and collective action complaint (the "Complaint") against Schmidt, on behalf of himself and all those similarly situated (hereafter "other members of the putative class"), in the Superior Court of the District of Columbia.

6.      The Complaint alleges that Schmidt employs Plaintiff and other members of the putative class as "independent operators" that are responsible for, *inter alia*, loading Schmidt's products into trucks and delivering them to customers' facilities in Maryland, Virginia, and Washington, D.C. The Complaint further alleges that pursuant to a "distribution agreement," Schmidt improperly classified Plaintiff and other members of the putative class as "independent contractors." (COMPLAINT, pp. 2-3). Plaintiff avers that he and other members of the putative class were, in fact, employees of Schmidt, and that this misclassification was done "for the purpose of avoiding the costs associated with the employment relationship." (COMPLAINT, p. 3).

7.      On the basis of that purported misclassification, the Complaint sets forth two causes of action: Count I asserts a claim for damages under the District of Columbia Minimum

---

[1] On October 2, 2017, Plaintiff attempted service on Schmidt's resident agent, but service was improper because only a copy of the Summons was provided. Despite the filing of an Affidavit of Service by the process server, as Plaintiff concedes in his Status Report (attached hereto as **Exhibit D**), Schmidt did not receive a copy of the Summons and Complaint, and service was not properly effected, until October 16, 2017. The time for removal under 28 U.S.C. §1446 does not commence until a defendant is properly served. *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service"); *Holmes v. PHI Service Co.*, 437 F. Supp. 2d 110 (D.D.C. 2006).

Wage Revision Act (hereinafter "DCMWRA"), D.C. Code Ann. §32-1001, *et seq.*; and Count II asserts a claim under the common law doctrine of unjust enrichment. (COMPLAINT, p. 1).

8.      Count I of the Complaint alleges that that Schmidt failed to adequately compensate Plaintiff and other members of the putative class in violation of the DCMWRA. Specifically, the Complaint states that Schmidt neglected to pay Plaintiff and other members of the putative class additional wages for all overtime hours worked in Washington D.C. at a rate of one and one-half (1.5) times their hourly rate. (COMPLAINT, ¶ 131). As a result of this alleged violation, Plaintiff seeks, among other things, "liquidated damages to treble the amount of overtime wages owed, reasonable attorneys' fees and costs, and any other relief the Court deems appropriate." (COMPLAINT, ¶ 131).

9.      Count II of the Complaint alleges that Plaintiffs and other members of the putative class[2] are entitled to recovery based on the common law doctrine of unjust enrichment. Specifically, Count II states that Schmidt did not provide Plaintiff and other members of the putative class the benefits the company typically provides to its employees, including "company-sponsored health insurance, company contributions into retirement accounts, costs associated with [Schmidt's equipment], reimbursements for expenses incurred as a result of the performance of their duties, as well as other benefits commonly associated with an employment relationship." (COMPLAINT, ¶ 141). Additionally, Count II states that Schmidt did not provide the employer's contribution required by the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. §3111, and "as a result Plaintiff [and other members of the putative class were] required to meet the full tax burden under the Internal Revenue Code ("IRC"), 26 U.S.C. § 1, *et seq.*" (COMPLAINT, ¶ 143).

_____

[2] Count II of the Complaint is not expressly written as a class/collective action. However, the closing paragraph of that section states: "[therefore], all members of the D.C. UE class are entitled to the same recovery as Plaintiff." As a result, Schmidt construes this count as applying to all members of the putative class as well.

3

## II.   Federal Question Jurisdiction Exists

10.     28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and 28 U.S.C. § 1441(a) states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1441 because the Plaintiff's civil action arises under and presents substantial questions concerning two federal laws: the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.,* and the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. §3111.

11.     The question of whether a suit "arises under" federal law, and therefore may be removed to federal court, is determined by the "well-pleaded complaint" rule, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Accordingly, this "rule makes the plaintiff the master of the claim," whereby "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*

12.     However, in this jurisdiction, there are at least two exceptions to the well-pleaded complaint rule: the "artful pleading" doctrine and the "substantial federal question" doctrine.

13.     Under the artful pleading doctrine—the first exception to the well-pleaded complaint rule—"plaintiffs may not defeat federal subject-matter jurisdiction by artfully pleading their complaint, as if it arises under state law, when the lawsuit is, in essence, based on federal law." *US Airways Master Exec., Council, Air Line Pilots Assoc., Int'l. v. Am. W. Master Exec., Council, Air Line Pilots Assoc., Int'l.*, 525 F. Supp. 2d 127, 133 (D.D.C. 2007). That is, a

4

defendant is permitted to remove a case on federal-question grounds when federal law completely preempts the state-law claim. *Id.* Complete preemption occurs where "the preemptive force of a [federal] statute [is] so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n, AFL-CIO v. Am. Mar. Officers*, 75 F. Supp. 3d 294, 301 (D.D.C. 2014) (quoting *Heintzman v. Amalgamated Transit Union Int'l,* 825 F.Supp.2d 161, 166 (D.D.C.2011)). Therefore, where a state law is completely preempted, a "plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 22 (1983).

14.    ERISA is one of the very few federal laws that courts have found completely preempts state law claims. *US Airways Master Exec., Council*, 525 F. Supp. 2d at 133–34 ("the Supreme Court has found that only three statutes have the requisite extraordinary preemptive force to support complete preemption…§ 301 of the Labor–Management Relations Act ("LMRA"), § 502(a) of [ERISA], and §§ 85 and 86 of the National Bank Act") (citing *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7-11 (2003)); *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004) ("When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. ERISA is one of these statutes.") (citations and brackets omitted); *Stewart v. Nat'l Educ. Ass'n*, 404 F. Supp. 2d 122, 125 (D.D.C. 2005) ("[ERISA] was enacted as a comprehensive regulation of private employee benefit plans for the purpose of protecting their participants and beneficiaries").

5

15. "ERISA's preemption clause, section 514(a), 29 U.S.C. § 1144(a), which preempts any and all State laws insofar as they ... relate to any employee benefit plan, has been interpreted extremely broadly by the Supreme Court as well as lower federal courts." *Bd. of Trustees of Hotel & Rest. Employees Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1486 (D.C. Cir. 1996) (citations and quotations omitted). "State laws" are defined as including "all laws, decisions, rules, regulations, or other state action having the effect of law." *Id.* (citing 29 U.S.C. § 1144(c)(1)). "Courts, in turn, have found Congress intended that all forms of state laws that *relate to* employee benefit plans are included in this definition, including judicially-created common law causes of action." *Id.* "Even general common law causes of action, such as breach of contract, which were not specifically intended to apply to benefit plans covered by ERISA, will nonetheless be preempted insofar they affect ERISA-protected rights." *Id.* at 1486–87.

16. The Supreme Court has defined the test for determining whether ERISA preempts a state law claim as follows: "if an individual, at some point in time, could have brought his claim under ERISA §502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA §502(a)(1)(B)." *Davila*, 542 U.S. at 210.

17. Here, Count II of the Complaint alleges that Schmidt did not provide Plaintiff and other members of the putative class with company-sponsored health insurance and various other employee benefits. The only reason Plaintiff would have been entitled to those benefits is if he were properly a participant or beneficiary under those ERISA plans. There is no independent duty for Schmidt to have provided those benefits. As a result, even though Plaintiff does not expressly refer to ERISA in the Complaint, his claim, nonetheless, falls within the scope of ERISA's preemption provisions, and therefore justifies removal to this Court.

18. Plaintiff's unjust enrichment claim also alleges that Schmidt "did not provide the

6

employer's portion of the contributions required by [FICA]," and "as a result, Plaintiff was required to meet the full tax burden under the [IRC]." (COMPLAINT, ¶ 143). This portion of Count II implicates the substantial federal question doctrine, and thus provides an additional justification for removal to this Court.

19.     Under the substantial federal question doctrine—a second exception to the well-pleaded complaint rule—certain state law claims may be removed to federal court where they "implicate significant federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308 (2005). In applying this exception, this Court abides by a three-part test for determining "when a federal court may exercise federal question jurisdiction over a state-law claim: where (1) the state-law claim necessarily raises a stated federal issue; (2) the federal issue is actually disputed and substantial; and (3) the exercise of federal jurisdiction will not disturb any congressionally approved balance of federal and state judicial responsibilities."[3] *Washington Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*, 760 F. Supp. 2d 94, 101 (D.D.C. 2011) (citing *Grable*, 545 U.S. at 319-20).

20.     Here, Plaintiff's claim raises the question of whether Schmidt was obligated to make employer contributions under FICA; this question is disputed and substantial in that it lies at the heart of Plaintiff's unjust enrichment claim, and Schmidt denies having any obligation to make such contributions; and Schmidt is not aware of any unbalancing of federal and state judicial responsibilities that could result from removal of this case to this Court.

21.     Although this Court has not had the occasion to address this specific issue, the

---

[3] This Court has also described this test as a two-step process. *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 299 (D.D.C. 2005) ("federal courts have developed a two-part analysis for determining whether a state law cause of action can serve as a basis for federal removal jurisdiction. As the Fourth Circuit sitting *en banc* recently described the test, the removing party must show: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial. If either of these two elements is lacking, removal is improper and the case should be remanded to state court") (internal citations and quotations omitted); see also *US Airways Master Exec., Council, Air Line Pilots Assoc., Int'l. v. Am. W. Master Exec., Council, Air Line Pilots Assoc., Int'l.*, 525 F. Supp. 2d 127, 131–32 (D.D.C. 2007).

Sixth Circuit's decision in *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352 (6th Cir. 2015) provides guidance. There, the Sixth Circuit approved the removal of a case where an employee brought putative class action state-law claims against her employer, alleging unpaid wages based on her employer's alleged practice of collecting both employee's share and its share of FICA tax from employee's wages, because, as the Court stated, "plaintiff's purported state-law claims were FICA claims in disguise." *Berera,* 779 F.3d at 354.

22.    In *Berera*, the court found that the plaintiff's claim for unpaid wages was really a claim that the employer had forced the plaintiff to pay both the employer's share and the employee's share of FICA taxes and was essentially a claim for a refund of those monies. *Id.* That is the exact nature of Plaintiff's claim in this case and removal is similarly proper here.

23.    Accordingly, Plaintiff's claim for unjust enrichment based on FICA contributions implicates this exception to the well-pleaded complaint rules and therefore provides another basis for removal to this Court.

## III.    Supplemental Jurisdiction

24.    Because Plaintiff's claim for unjust enrichment provides a basis for removal, this Court may also exercise jurisdiction over Plaintiff's DCMWRA claim, set forth in Count I of the Complaint.

25.    "Once a case has been removed, the district court has original jurisdiction over the plaintiff's claim under federal law, and may thus 'exercise supplemental jurisdiction over accompanying state law claims so long as those claims constitute other claims that ... form part of the same case or controversy.'" *Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 83–84 (D.D.C. 2011) (citing *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997)). "A federal claim and a state law claim form part of the same

8

Article III case or controversy" where "the two claims derive from a common nucleus of operative fact such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the Court comprises but one constitutional case." *Jones v. Changsila*, No. CV 15-1240 (RDM), 2017 WL 4179881, at *8 (D.D.C. Sept. 20, 2017) (citing *Lindsay v. Gov't Emps. Ins. Co*., 448 F.3d 416, 423–24 (D.C. Cir. 2006)) (brackets omitted).

26. Here, the Court may exercise jurisdiction over the DCMWRA claim because the allegations that support Plaintiff's claim for unjust enrichment "derive from a common nucleus of operative fact" as that of the DCMWRA claim. Specifically, both claims center on the nature of Schmidt's engagement of its independent operators. Indeed in both of Plaintiff's claims, he alleges that, as a result of the distribution agreement, Schmidt improperly misclassified Plaintiff and other members of the putative class "for the purpose of avoiding the costs associated with the employment relationship." (COMPLAINT, pg. 3).

## IV.   Procedural Compliance

27. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

28. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty (30) days after proper service on Schmidt of the Complaint setting forth the claims for relief on which removal is based.

29. A true and correct copy of this Notice of Removal will be filed in the Superior Court of the District of Columbia, and a copy will be served upon Plaintiffs.

30. By filing this Notice of Removal, Schmidt does not waive, and fully reserves, all rights and defenses that may be available to it in this action.

31. In the event that Plaintiff files a motion to remand, or the Court considers remand *sua sponte*, Schmidt respectfully requests the opportunity to submit additional arguments or

9

evidence as may be appropriate in support of removal.

**WHEREFORE**, Defendant Schmidt Baking Company, Inc., based upon the allegations in this Notice of Removal, requests that this case proceed in this Court, as an action properly removed from the Superior Court of the District of Columbia and properly entered upon the docket of the United States District Court for the District of Columbia, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

Respectfully submitted,

/s/ Kathleen Pontone
Kathleen Pontone, Bar No. 01225
Amber N. Jackson, Bar No. 1026744
Miles & Stockbridge P.C.
100 Light Street
Baltimore, MD 21202
Telephone: (410) 385-3757
Email: kpontone@milesstockbridge.com
Email: ajackson@milesstockbridge.com
Facsimile: (410) 385-3700

**Attorneys for Defendant**

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2017, a copy of the foregoing

**Notice of Removal** was filed and served via the Court's CM/ECF system and sent via email and

first-class mail, postage prepaid, to:

Robert J. Leonard, Esq.
rleonard@nicholllaw.com
Benjamin L. Davis, III, Esq.
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

**Attorneys for Plaintiff**

*/s/* Amber N. Jackson
Amber N. Jackson

4832-9551-0098, v. 4

11

**Filed**
**D.C. Superior Court**
**10/19/2017 16:59PM**
**Clerk of the Court**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| MICHAEL MILLES | : | Case Number:  2017 CA 6131 B |
| v. | : | Judge: Florence Y. Pan |
| SCHMIDT BAKING COMPANY, INC. | : | Next Hearing: December 15, 2017 |

## ORDER

This matter comes before the Court upon consideration of plaintiff's Motion for *Pro Hac Vice* Admission of Attorney Benjamin L. Davis, III, Esq. ("Pl. Mot."), filed on October 13, 2017. Plaintiff's motion is accompanied by an Application for Admission *Pro Hac Vice*, which indicates that Mr. Davis has fully satisfied the requirements of the relevant rules. *See* Pl. Mot. Ex. 1; *see also* Super. Ct. Civ. R. 101(a)(3).  Plaintiff's motion is also accompanied by a receipt from the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law, indicating that Mr. Davis has paid his filing fee, and that he has not applied for admission *pro hac vice* in more than five cases in District of Columbia courts this calendar year. *See* Pl. Mot. Ex. 1.

Accordingly, it is this 19th day of October, 2017, hereby

**ORDERED** that plaintiff's motion is **GRANTED**; and it is further

**ORDERED** that Benjamin L. Davis, III, Esq., is admitted *pro hac vice* as counsel for plaintiff in this action pursuant to Super. Ct. Civ. R. 101;[1] and it is further

---

[1]     Mr. Davis is directed to register for CaseFile Express within seven days of the filing of this Order so that he may receive electronic service of orders and other filings in this matter.

1

**ORDERED** that the Clerk of the Court enter the appearance of Benjamin L. Davis, III,

Esq., as an additional attorney on behalf of plaintiff as of the date of this Order.

      **SO ORDERED.**


                               *Florence Pan*

                               Judge Florence Y. Pan
                               Superior Court of the District of Columbia

Copies to:

Robert Leonard, Esq.
Benjamin L. Davis, III, Esq.
36 South Charles Street, Suite 1700
Baltimore, MD 21201
*Counsel for Plaintiff*

Schmidt Baking Company, Inc.
601 South Caroline Street, Suite 200
Baltimore, MD 21231
*Defendant*

Schmidt Baking Company, Inc.
650 South Exeter Street, Suite 200
Baltimore, MD 21202
*Defendant*

Filed
D.C. Superior Court
10/18/2017 16:00PM
Clerk of the Court

| | |
|---|---|
| **MICHEAL MILLES**<br><br>Plaintiff,<br><br>***Individually and On Behalf of Other***<br>***Similarly Situated Individuals***<br><br>v.<br><br>**SCHMIDT BAKING COMPANY, INC.**<br><br>Defendant. | **IN THE SUPERIOR COURT FOR**<br>**THE DISTRICT OF COLUMBIA**<br>Case No 2017 CA 006131 B |

## STATUS REPORT: NOTICE REGARDING SERVICE

1.      On October 2, 2017, Plaintiff Micheal Milles (hereinafter "Plaintiff") served the Complaint, Summons, Civil Division Civil Actions Information Sheet and Initial Order and Addendum on Patti Berkley, who was authorized to accept service for George J. Philippou, Resident Agent for Defendant Schmidt Baking Company, Inc. (hereinafter, "Defendant").

2.      Subsequently, on October 16, 2017, Plaintiff was contacted by Defendant's Counsel. Defendant's Counsel informed Plaintiff's Counsel that service was deficient. It was stated that Defendant only received the Summons and no other documents.

3.      At that time, Plaintiff's Counsel served all necessary documents by electronic mail. Defendant accepted service. Thus, the date of service should be corrected to October 16, 2017. Defendant should have until twenty-one (21) days from that date to Answer the Complaint.

Respectfully submitted,

*/s/ Bruce H. Powell*
Bruce H. Powell, Esq. (478697)
bpowell@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a copy of the foregoing Status Report was served by electronic means through CaseFileXpress filing system, concurrent with the filing of this document.

*/s/ Bruce H. Powell*

**Filed**
**D.C. Superior Court**
**10/18/2017 14:42PM**
**Clerk of the Court**

| | |
|---|---|
| **MICHEAL MILLES** | **IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA** |
| Plaintiff, | Case No 2017 CA 006131 B |
| *Individually and On Behalf of Other Similarly Situated Individuals* | |
| v. | |
| **SCHMIDT BAKING COMPANY, INC.** | |
| Defendant. | |

## NOTICE OF ENTRY OF APPEARANCE

Please enter the appearance of Bruce H. Powell, Esq. of the Law Offices of Peter T. Nicholl

as counsel for Plaintiff, Micheal Milles, in the above captioned matter.

Respectfully submitted,

*/s/ Bruce H. Powell*
Bruce H. Powell, Esq. (478697)
bpowell@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a copy of the foregoing Status Report was served by electronic means through CaseFileXpress filing system, concurrent with the filing of this document.


*/s/ Bruce H. Powell*

Filed
D.C. Superior Court
10/13/2017 08:49AM
Clerk of the Court

| | |
|---|---|
| **MICHEAL MILLES** | **IN THE SUPERIOR COURT FOR** |
| Plaintiff, | **THE DISTRICT OF COLUMBIA** |
| | Case No 2017 CA 006131 B |
| ***Individually and On Behalf of Other*** | |
| ***Similarly Situated Individuals*** | |
| v. | |
| **SCHMIDT BAKING COMPANY, INC.** | |
| Defendant. | |

## MOTION FOR ADMISSION *PRO HAC VICE* FOR BENJAMIN L. DAVIS, III

Robert J. Leonard, a member of the Bar of this Court and attorney for Plaintiff Micheal Milles, respectfully moves that Benjamin L. Davis, III be admitted *pro hac vice* as counsel for Micheal Milles in the above captioned matter. Attached in support of this motion are: (1) Application for Admission Pro Hac Vice of Benjamin L. Davis, III; (2) Declaration of Benjamin L. Davis, III; (3) Praecipe of Appearance for Benjamin L. Davis, III; (4) Receipt from the Committee on Unauthorized Practice of Law; and (5) a Proposed Order.

Respectfully submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (1031023)
rleonard@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

**Form 8.  Application for Admission Pro Hac Vice.**



DISTRICT OF COLUMBIA
COURT OF APPEALS

[or]

SUPERIOR COURT OF
THE DISTRICT OF COLUMBIA

| Micheal Milles                          | )   |                                  |
|-----------------------------------------|-----|----------------------------------|
|                    Plaintiff/Appellant, | )   | APPLICATION FOR ADMISSION        |
|                                         | )   | PRO HAC VICE                     |
|                    v.                   | )   |                                  |
|                                         | )   |                                  |
| Schmidt Baking Company, Inc.        ,   | )   | Case No. 2017 CA 006131 B        |
|                    Defendant/Appellee.  | )   |                                  |
| Schmidt Baking Company, Inc.            | )   |                                  |

I declare under penalty of perjury:

[✓]   (1) That I have not applied for admission pro hac vice in more than five
cases in courts of the District of Columbia this calendar year;

[✓]   (2) That I am a member in good standing of the highest court(s) of the
State(s) of Maryland                                          ;

(state all states)

[✓]   (3) That there are no disciplinary complaints pending against me for
violation of the rules of the courts of those states;

[✓]   (4) That I have not been suspended or disbarred for disciplinary reasons
from practice in any court;

[✓]   (5) That I am associated with
Robert J. Leonard, Esquire (Bar No. 1031023), a member of the Law Offices of Peter T. Nicholl

(name the D.C. Bar member under Super. Ct. Civ. R. 101;
and give his/her D.C. Bar Number)

[✓]   (6) That I do not practice or hold out to practice law in the District of
Columbia;  and

☑  (7) That I have read all of the rules of the relevant division of the
Superior Court of the District of Columbia and the District of Columbia
Court of Appeals, and have complied fully with District of Columbia
Court of Appeals Rule 49 and, as applicable, Super. Ct. Civ. R. 101.
The reason(s) I am applying for admission pro hac vice are as follows:
I am not barred in the District of Columbia but I am working
on the above-captioned matter with my colleague, Mr. Robert
Leonard.

_____

_____

_____

        I acknowledge the jurisdiction of the courts of the District of
Columbia over my professional conduct, and I agree to be bound by the
District of Columbia Court of Appeals Rules of Professional Conduct, in
this matter, if I am admitted pro hac vice. I have applied for admission
pro hac vice in the courts of the District of Columbia 0
times previously in this calendar year.

        I attach hereto the receipt issued by the District of Columbia
Court of Appeals Committee on the Unauthorized Practice of law as
proof of my prior payment of the pro hac vice fee.

_____              Benjamin L. Davis, III, Esquire
        Signature                            Print Name

                             September 29, 2017
                             Date

                             The Law Offices of Peter T. Nicholl

                             36 S. Charles Street, Suite 1700

                             Baltimore, MD 21201
                             Address

                             410-244-7005
                             Telephone Number

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a copy of the foregoing Motion for Admission *Pro Hac Vice* for Benjamin L. Davis, III and accompanying documents were served by electronic means through CaseFileXpress filing system, concurrent with the filing of this document.

*/s/ Robert J. Leonard*

**MICHEAL MILLES**

Plaintiff,

***Individually and On Behalf of Other
Similarly Situated Individuals***

v.

**SCHMIDT BAKING COMPANY, INC.**

Defendant.

**IN THE SUPERIOR COURT FOR
THE DISTRICT OF COLUMBIA**
Case No 2017 CA 006131 B

## PRAECIPE TO ENTER APPEARANCE

Please take notice that the undersigned hereby request permission of this Court for

Benjamin L. Davis, III to appear and participate, *pro hac vice*, as Counsel for Plaintiff, Micheal

Milles. Pursuant to rule 101 of the Superior Court Rules of Civil Procedure, in support of this

request the undersigned aver as follows:

1. Benjamin L. Davis, III's address and telephone number are:

   36 South Charles Street
   Baltimore, Maryland 21201
   410-244-7005

2. Benjamin L. Davis, III is a member of the Maryland State Bar.

3. Benjamin L. Davis, III has not previously sought to appear pursuant to Rule 101.


Robert J. Leonard, a member in good standing of the District of Columbia Bar and counsel

of record in the above-captioned matter, joins in this Praecipe.

Respectfully Submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (1031023)

rleonard@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III, Esq.
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

**MICHEAL MILLES**

Plaintiff,

*Individually and On Behalf of Other*
*Similarly Situated Individuals*

v.

**SCHMIDT BAKING COMPANY, INC.**

Defendant.

**IN THE SUPERIOR COURT FOR**
**THE DISTRICT OF COLUMBIA**
Case No 2017 CA 006131 B

## DECLARATION OF BENJAMIN L. DAVIS, III

I, BENJAMIN L. DAVIS, III, declare under penalty of perjury:

1.    I have not applied for admission *pro hac vice* in more than five cases in courts of the District of Columbia this calendar year.

2.    I am a member in good standing of the following Courts: Maryland, Fourth Circuit Court of Appeals, and United States District Court for Maryland.

3.    There are no disciplinary complaints against me for violation of the rules of the Courts set forth in paragraph 2 of this Declaration.

4.    I have not been suspended or disbarred for disciplinary reasons from practice in any court, or resigned with charges pending in any jurisdiction or court.

5.    I am associated with Robert J. Leonard, D.C. Bar No. 1031023 of the firm The Law Offices of Peter T. Nicholl, 36 South Charles Street, Baltimore, Maryland 21201, under D.C. Superior Ct. Civ. R. 101.

6.    I do not practice or hold out to practice law in the District of Columbia. I have never applied for admission to the D.C. Bar, and thus have not had an application for admission to the D.C. Bar denied.

7.    I have read all the rules of the relevant division of the Superior Court of the District

of Columbia and the District of Columbia Court of Appeals, and have complied fully with District

of Columbia Court of Appeals Rule 49 and D.C. Superior Court Ct. Civ. R. 101. The reasons I am

apply *pro hac vice* are as follows: The Law Offices of Peter T. Nicholl represents Plaintiff Micheal

Milles in the above-captioned matter. To assist in the representation of Micheal Milles in this

matter, I respectfully seek admission *pro hac vice* to the District of Columbia Bar.

8.    I acknowledge the jurisdiction of the Courts of the District of Columbia over my

professional conduct, and I agree to be bound by the District of Columbia Court of Appeals Rules

of Professional Conduct if I am admitted *pro hac vice*. I agree to promptly notify the Court if,

during the course of the above-captioned proceedings, I am suspended or disbarred for disciplinary

reasons, or if I resign with charges pending in any jurisdiction or court to which I am admitted.

9.    I attach hereto the receipt issued by the District of Columbia Court of Appeals

Committee on the Unauthorized Practice of Law as proof of my prior payment of the *pro hac vice*

fee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    _10 · 12 · 17_

       (date)

                                         Signature of Declarant



District of Columbia Court of Appeals
Committee on Unauthorized Practice of Law
430 E Street, N.W. - Room 123
Washington, D.C. 20001
202 / 879-2777

**RECEIPT**

APPLICATION TO APPEAR *PRO HAC VICE*

Of  Benjamin L. Davis
   Name of Attorney

Case No.

The District of Columbia Court of Appeals Committee on Unauthorized Practice of Law,
in accordance with the provisions of D.C. App. Rule 49(c)(7), has received a copy of the
application to appear *pro hac vice* and the required filing fee.  As of this date, the
Committee's records indicate that the attorney has not applied for admission *pro hac vice* in
more than five (5) cases in the courts of the District of Columbia this calendar year.

10/02/2017
Date

for the
Committee on Unauthorized Practice of Law
Room 123 - 202/879-2777

**MICHEAL MILLES**

        Plaintiff,

*Individually and On Behalf of Other*
*Similarly Situated Individuals*

v.

**SCHMIDT BAKING COMPANY, INC.**

        Defendant.

**IN THE SUPERIOR COURT FOR
THE DISTRICT OF COLUMBIA**
Case No 2017 CA 006131 B

## [PROPOSED] ORDER

Upon consideration of the Motion for Admission Pro Hac Vice for Benjamin L. Davis, III,

It is on this ___ day of _____, 2017, hereby

    ORDERED, that the Motion is GRANTED.

    SO ORDERED.

                                    _____

                                    Corinne A. Beckwith
                                    JUDGE

Filed
D.C. Superior Court
10/11/2017 13:27PM
Clerk of the Court

## AFFIDAVIT OF SERVICE

District of Columbia                                        **Superior Court**

Case Number: 2017CA006131B

Plaintiff:
**Micheal Milles**

vs.

Defendant:
**Schmidt Baking Company, Inc.**

For:
Peter T. Nicholl, Law Offices of
36 S. Charles Street
Suite 1700
Baltimore, MD 21201

Received by Michael Barnes to be served on **Schmidt Baking Company, Inc., c/o George J. Philippou Registered Agent, 650 South Exeter Street, Suite 200, Baltimore, MD 21202**.

I, Michael Barnes, being duly sworn, depose and say that on the **2nd day of October, 2017 at 9:53 am, I:**

**SUBSTITUTE** served by delivering the **Complaint, Summons, Civil Division Civil Actions Branch Information Sheet and Initial Order and Addendum** to: **Patti Berkey**, as Paralegal to Mr. Phillipou and authorized to accept service for **George J. Philippou**, at the address of: **650 South Exeter Street, Suite 200, Baltimore, MD 21202**.

**Description** of Person Served: Age: 55, Sex: F, Race/Skin Color: White, Height: 5'3, Weight: 120, Hair: blonde, Glasses: Y

I HEREBY CERTIFY that I am a competent person, eighteen years of age or older, and not a party to the above legal action. I SOLEMNLY AFFIRM under the penalties of perjury that through personal knowledge, the contents of the foregoing are true.

Subscribed and Sworn to before me on the 11th
day of OCTOBER, 2017 by the affiant who
is personally known to me.

_____
Notary Public

PEDRO JOSE MARIN
NOTARY PUBLIC
BALTIMORE COUNTY
MARYLAND
My Commission Expires 03-19-2020

_____
**Michael Barnes**
Independent Process Server

De Novo Attorney Services, Inc.
30 E. Padonia Road
Suite 207
Timonium, MD 21093
(443) 895-4999

Our Job Serial Number: NOV-2017006906
Ref: 2017CA006131B (ECS)

Copyright © 1992-2017 Database Services, Inc. - Process Server's Toolbox V7.2g

**Filed**
**D.C. Superior Court**
**09/01/2017 12:02PM**
**Clerk of the Court**

| | |
|---|---|
| **MICHEAL MILLES**<br>9138 McHenry Lane<br>Lanham, Maryland 20706<br>*Resident of Prince George's County*<br><br>Plaintiff,<br><br>*Individually and On Behalf of Other*<br>*Similarly Situated Individuals*<br><br>v.<br><br>**SCHMIDT BAKING COMPANY, INC.**<br>601 South Caroline Street<br>Suite 200<br>Baltimore, Maryland 21231<br><br>Serve: George J. Philippou, R.A.<br>650 South Exeter Street<br>Suite 200<br>Baltimore, Maryland 21202<br><br>Defendant. | **IN THE SUPERIOR COURT FOR**<br><br>**THE DISTRICT OF COLUMBIA**<br><br><br>Class/Collective Action Claims<br><br><br>Jury Trial Requested<br><br><br>Civil Action No.:  2017 CA 006131 B |

## CLASS AND COLLECTIVE ACTION COMPLAINT

MICHEAL MILLES, Plaintiff, by and through his undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submits his Complaint on behalf of himself and all those similarly situated against SCHMIDT BAKING COMPANY, INC., Defendant, to recover (Count I) unpaid wages, liquidated damages, statutory penalties, equitable and injunctive relief, attorneys' fees and costs under the District of Columbia Minimum Wage Revision Act (hereinafter, "DCMWRA"), D.C. Code Ann. § 32-1001, *et seq.*; and (Count II) compensatory damages under the common law doctrine of Unjust Enrichment, and in support thereof state as follows:

## INTRODUCTION AND BACKGROUND

Schmidt Baking Company, Inc. (hereinafter, "Defendant") is in the business of producing and delivering bread products. Defendant produces one hundred and thirty million (130,000,000) bakery items annually, making it the largest independent wholesale baker in the Mid-Atlantic region. Defendant employs approximately eight hundred and sixty (860) employees in its eleven (11) distribution centers.

Defendant operates a regional network of bakeries and depots, providing baked goods to various establishments. These establishments include private customers such as restaurants, grocery stores and various small businesses. Schools, prisons and warehouses are among the public establishments that Defendant serves.

For purposes of carrying out its business, Defendant retains independent operators ("IOs"). IOs are responsible for delivering Defendant's products. This is accomplished through the use of box trucks leased from Defendant. Every morning, IOs are required to load their trucks with products. They must then deliver the products to a series of stores within their "territory." IOs have a set schedule in which to accomplish this task. Their schedules are specific to where the stores within their sector are located.

Upon arriving at a store, IOs are responsible for various tasks, including stocking shelves, removing old or stale products and reorganizing displays. IOs are also responsible for setting up and stocking promotional displays. These displays are typically only limited to Defendant's products.

Plaintiff is an IO. Plaintiff and other IOs purchased distribution rights from Defendant. This allowed them to distribute products to Defendant's customers within a predefined territory. Each territory is comprised of various establishments.

2

Pursuant to a Distribution Agreement (hereinafter, "Agreement"), Defendant classifies its IOs as independent contractors. The Agreement outlines the rights and responsibilities of Defendant and its IOs. It purports to cement Plaintiff's and other IOs' classification as independent contractors. IOs are issued IRS Form 1099 payments as a result of this classification. However, this classification is a façade. IOs are actually employees. Defendant classified its IOs as independent contractors for the purpose of avoiding the costs associated with the employment relationship. This includes payroll taxes and the payment of employee benefits.

Plaintiff challenges his and other IOs' classification. Defendant did not treat Plaintiff or any other IO as independent contractors. Defendant denied their IOs the ability to exercise entrepreneurial skill. Defendant directed the IOs' conduct. Defendant exercised authority in regard to all aspects of the IOs' "business." Defendant told its IOs exactly what to do. Defendant had complete control over Plaintiff's and other IOs' work activities.

One aspect of control was specific to profits and losses. Defendant controlled the retail and wholesale pricing of its products. Defendant also determined the amount of product that its IOs could purchase. By exercising this control, Defendant denied Plaintiff and other IOs the ability to increase or decrease their profits as a true independent contractor could.

IOs also lacked discretion in regard to what products to stock. They also had no say in terms of when to run promotions and sales. IOs could not determine how often they would service their assigned stores. They were also prevented from making independent arrangements with customers. Defendant would instead contract with customers separately and establish which products were to be sold and the frequency of deliveries. Defendant would then direct the IOs accordingly. An IO's success was entirely under Defendant's control.

3

Plaintiff and other IOs were required to accept the terms established by Defendant. Failure to do so would result in an IO being "breached." An "incurable breach" was one that could not be resolved. This would cause the Agreement to be dissolved; it was the equivalent of termination. Fear of termination led Plaintiff and other IOs to agree to Defendant's unlawful conduct. Defendant was well aware of the impropriety of its conduct.

Plaintiff and others similarly situated were not always classified as independent contractors. Prior to 2011, all of Defendant's delivery drivers were classified as employees. Based on the employment relationship between Defendant and its drivers, this classification was proper. To date, this relationship remains the same. Other than calling them IOs, nothing regarding the manner in which Defendant currently interacts with its drivers has changed. The only difference is that employees were entitled to the benefits associated with their employee classification. Defendant's wrongful decision to reclassify its drivers led Plaintiff and other IOs to be denied the employee rights and privileges they are owed.

Their misclassification as independent contractors also caused them to be given incorrect tax forms. Rather than receiving the appropriate Form W2, Plaintiff and other IOs received Form 1099s. The Form 1099s were devoid of deductions based on the Federal Insurance Contributions Act ("FICA") and other appropriate deductions. Accordingly, Defendant was enriched at the expense of Plaintiff and others similarly situated.

Mischaracterizing Plaintiff and other IOs as independent contractors concealed the true relationship between Defendant and its employees. This deprived Plaintiff and other IOs of financial benefits to which they were entitled. As a result, Defendant unjustly enriched itself at the expense of Plaintiff. Plaintiff and other IOs incurred considerable monetary losses through policies designed to exploit them.

4

## **THE PARTIES**

1.     Plaintiff Micheal Milles (hereinafter, "Plaintiff" or "Milles") is an adult resident of Prince George's County, Maryland.

2.     Defendant Schmidt Baking Company, Inc. (hereinafter, "Defendant") is a for-profit company.

3.     Defendant is in the business of producing and distributing bread products.[1]

4.     Defendant is united with H & S Bakery, Inc., Northeast Foods, Inc. and Holsum. Defendant is engaged in a common enterprise with these companies. They act together for the purpose of delivering goods to various customers throughout the Mid-Atlantic region.

5.     Defendant owns and operates numerous baking and distribution facilities both individually and through its wholly owned subsidiary Schmidt Baking Distribution, LLC (hereinafter, "Schmidt").

6.     Defendant owns and operates facilities in Maryland, Virginia, West Virginia, New Jersey, Pennsylvania, Delaware, New York, Ohio and the District of Columbia. Among these are distribution centers located in Hanover, Maryland (hereinafter, "Hanover depot") and Clinton, Maryland (hereinafter, "Clinton depot").

7.     From approximately May 1, 2012 to May 12, 2013, Plaintiff Milles worked for Defendant. He was hired to deliver Defendant's bread products and was based out of the Clinton depot. He was classified as an employee during this time.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

5

8.     On May 12, 2013, Plaintiff Milles was reclassified as an independent contractor. His title changed to independent operator ("IO") and Defendant ceased paying him as an employee. Plaintiff's first route as an IO was in Manassas, Virginia, a route he held until November 17, 2013. From November 17, 2013 to the present, Plaintiff has performed his duties on a route in Washington, D.C.

9.     At all times relevant to this Complaint, Plaintiff engaged in interstate commerce. This is based on the duties he performed as part of his employment with Defendant. Plaintiff transported goods that had not yet reached their final resting place. The goods were transported via interstate roadways.

10.    Plaintiff worked for Defendant who, at all times throughout Plaintiff's employment, including from May 12, 2013 to the present, fell within the definition of the term "employer" under DCMWRA, D.C. Code Ann. § 32-1002(3).

11.    Defendant also fell within the definition of the term "employer" under the Internal Revenue Code (hereinafter, "IRC"), 26 U.S.C. § 3401(d), 26 U.S.C. § 3121(b).

12.    At all times, Plaintiff fell within the definition of the term "employee" under the DCMWRA, D.C. Code Ann. § 32-1002(2).

13.    Plaintiff was also an employee of Defendant under D.C. common law. For the entirety of his tenure, (1) Plaintiff had no discretion over the performance of his duties; (2) the service Plaintiff provided, delivering baked goods, was well within Defendant's usual course of business; (3) Plaintiff was not engaged in an independently established trade; (4) Defendant provided the vehicle Plaintiff used to make his deliveries; (5) Defendant owned and operated the depot out of which Plaintiff was based; (6) Plaintiff received wages directly from Defendant; and

6

(7) due to the strict control maintained by Defendant, Plaintiff was not able to affect the policies regarding his work.

14.     At all times, Plaintiff also fell within the definition of the term "employee" under the IRC, 26 U.S.C. § 3401(c), 26 U.S.C. § 3121(d).

15.     At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiff and others similarly situated.

16.     Individually and together, Defendant's agents were actively engaged in the management and direction of Plaintiff and other similarly situated employees.

17.     Defendant possessed and exercised authority to determine the hours worked by Plaintiff and others similarly situated.

18.     Defendant had the authority to control Plaintiff's tasks and the tasks of others similarly situated.

19.     Defendant had and exercised the power and authority to change the course of Plaintiff's and other similarly situated employees' duties.

20.     Plaintiff and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

21.     Defendant made all decisions relating to Plaintiff's and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

22.     Original and subject matter jurisdiction in this Honorable Court are provided by D.C. Code Ann. § 11-921(a)(6), as this case is being brought in the District of Columbia and under its laws.

7

23.     The DCMWRA applies to Plaintiff, as Plaintiff performed more than fifty percent (50%) of his duties within the District of Columbia.

24.     Venue is appropriate; many of the unlawful acts central to this matter occurred within the District of Columbia.

25.     This Honorable Court has personal jurisdiction over Defendant, as Defendant conducts sufficient business within the forum, the District of Columbia, so as to constitute a submission to its laws.

## **FACTUAL ALLEGATIONS FOR ALL CLAIMS**

26.     Defendant produces and distributes bread products. Defendant serves multiple establishments throughout the Mid-Atlantic region. This includes restaurants, grocery stores and small businesses.

27.     Defendant owns and operates numerous baking and distribution facilities. Defendant maintains facilities in Maryland, Virginia and the District of Columbia. The facilities serve as a regional network in order for Defendant to distribute its products.

28.     Plaintiff and others similarly situated were hired by Defendant to work as delivery drivers. Their primary function was to distribute Defendant's bread products.

29.     Plaintiff and others similarly situated delivered products to various establishments. This was accomplished through the use of box trucks leased to Plaintiff by Defendant.

30.     For most of Defendant's history, Plaintiff and others similarly situated were classified as employees. They were paid a salary for their deliveries. They were also entitled to regular benefits.

31.     Defendant established an employee benefit plan that it offered to all of its employees. Defendant continues to offer this plan to all individuals it classifies as employees.

8

32.    In 2011, Defendant decided to change its delivery drivers' employment status. Defendant began transitioning Plaintiff and others similarly situated to independent operators (hereinafter, "IOs"). Defendant began classifying its drivers as independent contractors. Drivers also had to start purchasing their routes.

33.    By mid-2013, the transition was complete.    All of Defendant's drivers were reclassified as IOs.   Their employee status was eliminated.

34.    Plaintiff and other IOs were instructed to create individual business entities. Defendant's agents assisted IOs with this process.[2]

35.    Defendant also provided Distribution Agreements ("Agreement(s)") to each of its IOs. The Agreement outlined the details of their new relationship.  The Agreement was prepared with no input from the IOs.

36.    The Agreement purported to be between Defendant and the business entity allegedly owned and operated by the IOs.

37.    The Agreement covered all aspects of the relationship between Defendant and the IOs (hereinafter, collectively referred to as the "Parties").  This included the obligations of both Parties and the manner in which the Agreement could be terminated.

38.    The fees that IOs would be paid for wearing Schmidt uniforms and driving Schmidt-branded vehicles were also outlined within each Agreement.

---

[2] During the transition, Defendant's former branch manager Thomas O'Donnell (hereinafter, O'Donnell) showed extreme favoritism to many delivery drivers. This includes assigning specific routes to delivery drivers that were deemed more profitable. This stems from O'Donnell's prior relationship with these drivers. O'Donnell is a former employee of Wonder Bread. At the time Wonder Bread was dissolved, O'Donnell and many of Wonder Bread's former employees came to work for Defendant. Many of these employees were Defendant's former delivery drivers. O'Donnell ensured that these drivers had profitable routes at the time they were transitioned to IOs. It was O'Donnell's practice to assign less profitable routes to delivery drivers that he disfavored.

9

39.    The Agreement also outlined the delivery routes that the IOs were required to purchase. Each route consisted of a geographic region where a number of stores were clustered. All of these stores were Defendant's clients. Defendant had preexisting relationships with these clients. Plaintiff and others similarly situated made deliveries to these same stores when they were classified as employees.

40.    Plaintiff and other IOs were still responsible for delivering products to Defendant's clients. The majority of Defendant's clients were still designated within the same routes; the routes did not change upon Plaintiff and other IOs being reclassified.

41.    Even after Defendant transitioned its employees to IOs, Defendant continued to control the routes. Defendant continued to determine the size of each route. Defendant also determined the number of clients to be serviced.

42.    Similar to when Plaintiff and other IOs were employees, any adjustments to the routes had to be approved by Defendant. Defendant initiated the vast majority of these adjustments. They were also negotiated by Defendant separately with customers. Defendant had the final say in regard to a route's expansion. Any decrease to the route also had to be authorized by Defendant.

43.    If IOs sought to add another customer within their route, they were required to put the customer in contact with Defendant. Defendant alone had the authority to negotiate the terms of service.

44.    Similar to when they were employees, Defendant would also carve out exceptions to Plaintiff's and other IOs' routes. Defendant would regularly subtract or add additional stores to be serviced outside of an IO's territory.

10

45. Even after the transition, Defendant retained the power to transfer stores located within an IO's route to another IO. The fact that the store may have been located entirely outside of the receiving IO's territory did not matter.

46. Defendant always did what was best for its business, even if this meant usurping what should have been the IOs' role. Following the time that Plaintiff and others similarly situated were transitioned to IOs, all that substantively changed was their titles and method of payment. Defendant continued to possess and exercise the sole power to determine the scope of Plaintiff's and other IOs' routes.

47. Defendant's routes were exceptionally costly. It was common for routes to cost upwards of one hundred thousand dollars ($100,000.00). IOs could not afford to purchase the routes outright. Instead, Defendant financed the routes through Exeter Financial Services (hereinafter, "Exeter"), an affiliated company.

48. To service their routes, Plaintiff and other IOs were also required to obtain their own box truck. The vast majority of IOs were unable to purchase the vehicles outright. Financing was again required. Presidential Truck Leasing (hereinafter, "Presidential") was Defendant's affiliate company that provided financing.

49. All aspects of the financing process were controlled by Defendant. Defendant had complete authority over Exeter and Presidential. The companies and Defendant operate as a joint enterprise.

50. Through selling and leasing the routes and vehicles, Defendant was able to substantially reduce the costs associated with running its business. However, this was done at Plaintiff's and other IOs' expense. The requirement that they purchase their routes and vehicles was a sham designed to save Defendant money.

11

51.     If the distribution Agreement was terminated between the Parties, IOs were no longer required to make payments. No sale occurred between an IO and Defendant. Defendant would simply re-take possession of the route and box truck. Defendant would then re-sell the route and vehicle to another IO. If an outstanding loan balance remained on a route, the former IOs did not recover any of their investment. This was regardless of the amount of equity established.

52.     Plaintiff is an IO who primarily operates in Washington, D.C.  After signing the Distribution Agreement, Plaintiff purchased his first route in May 2013, which was in Manassas, Virginia. In November 2013, he purchased a route in the District of Columbia.

53.     Before signing the Agreement, Plaintiff was an employee of Defendant. He was classified as an employee from May 2012 until May 2013. His role was that of a "distributor," in which he would deliver Defendant's product to its clients. As a distributor, Plaintiff's duties were identical to the ones he performed as an IO. His duties always centered on delivering Defendant's products. However, when employed with Defendant, Plaintiff was paid a regular commission. He also received various benefits, including retirement contributions and company-run health insurance. He was issued an IRS Form W2 at the end of each year.

54.     As Defendant's employees, Plaintiff and others similarly situated received substantial benefits. They received employee welfare and pension benefit plans. They received company sponsored medical and dental insurance. They were entitled to 401k retirement accounts with regular employer contributions. They were also given paid vacation days and other benefits commensurate with their employment.

55.     Defendant continues to offer these same benefit plans to its current employees. Defendant does not offer these benefits to Plaintiff and other IOs. This was a result of being erroneously classified as independent contractors.

12

56.    At the end of each year, Plaintiff and other IOs were issued IRS Form 1099s, detailing the payments by Defendant. Defendant filed the IRS Form 1099s with the IRS.

57.    The Form 1099s did not detail the deductions and contributions that the Internal Revenue Code (hereinafter, "IRC") requires employers to give to their employees. 26 U.S.C. § 6051(a).

58.    Defendant knew that Plaintiff and other IOs were employees under the IRC.

59.    Defendant intentionally filed Form 1099s in connection with Plaintiff and other IOs in an effort to avoid the required employer contributions.

60.    Defendant should have issued Plaintiff and other IOs Form W2s. The Form W2s should have also been filed on their behalf. Plaintiff's and other IOs' work conditions make clear they were always employees.

61.    There were no material changes to Defendant's delivery drivers' duties once they were transitioned to IOs. Their basic duties remained the same. Their duties consisted solely of driving and manual labor. Defendant continued to exert complete control over their labor.

62.    Every morning, Plaintiff and other IOs were required to report to their respective distribution centers. Defendant maintained complete control over Plaintiff's and other IOs' arrival and departure times.

63.    At the Clinton depot, Plaintiff and other IOs were required to report at approximately 5:00 a.m. Upon their arrival, it was required that they load their trucks. They were also required to leave the depot with their loaded trucks no later than 7:00 a.m.

64.    Similar procedures exist at all depots. For example, the Hanover depot required IOs to be out of the warehouse with their loaded truck by no later than 5:00 a.m.

13

65. Plaintiff and other IOs had to follow Defendant's schedule precisely. Failure to do so resulted in disciplinary action, including the loss of pay. Plaintiff can recall instances when he and other IOs suffered repercussions as a result of leaving their depots after the prescribed time.

66. There were specific tasks Plaintiff and other IOs had to perform at the depots. They had to maintain inventory records of what they sold. Upon arriving to their depot, they first had to correct the inventory records. Plaintiff and other IOs had to ensure the records accurately reflected the products that were purchased. This was accomplished through handheld computers.

67. The products Plaintiff and other IOs sold were all tracked via the handhelds. Defendant distributed the handhelds to each of its IOs. IOs were given unique codes particular to their routes each morning. The codes changed daily. The handhelds required two (2) codes to access the needed functions.

68. The morning code allowed IOs to confirm their inventory. It also allowed them to make any needed adjustments. IOs needed the evening codes to submit their delivery history. These reports were transmitted via the handhelds.

69. It was impossible for Plaintiff and other IOs to submit their end of day reports without access to their evening codes. In order to be paid for their deliveries each day, Plaintiff and all other IOs had to first submit this report. Defendant used this to its advantage. For disciplinary measures, Defendant often prevented Plaintiff and other IOs from accessing their evening codes. It was Defendant's practice to withhold the codes if an IO arrived or departed from the depot late. This would result in IOs not being paid for any deliveries they made that day. By withholding the codes, Defendant was able to financially penalize IOs for their tardiness.

70. Plaintiff can recall an instance when he was "breached" by Defendant for leaving his depot after the prescribed time. As a result of his tardiness, the evening code required for him

14

to close out his handheld for the day was retained by Defendant. Consequently, Plaintiff was not paid for the deliveries he made that day.

71.     The method by which the codes were communicated varied by depot. At the Clinton depot, the morning codes were posted on a board each morning. The evening codes were communicated verbally. At the Hanover depot, Defendant's agents communicated all codes verbally. The verbal communications gave Defendant the opportunity to punish IOs who arrived at or left the depot late.

72.     Once Plaintiff and other IOs confirmed their inventory at the depot, they would then load their vehicles with the required product. From there, they would depart their depot and deliver the products to the stores along their route.

73.     Plaintiff always worked seven (7) days a week. On Mondays, Tuesday, Thursdays, Fridays and Saturdays, his routes would typically take ten (10) to twelve (12) hours to complete. On Wednesdays and Sundays, his routes would usually take between four (4) to five (5) hours.

74.     Plaintiff always worked in excess of forty (40) hours per week. He typically worked anywhere from fifty-eight (58) to seventy (70) hours per week. It was common for other IOs to work similar hours.

75.     The primary reason that Plaintiff and others similarly situated were required to work this many hours was due to the high volume of business attributable to many of the stores within their routes. Since many of these stores ordered and maintained substantial amounts of product, it was typical for Plaintiff and other IOs to spend three (3) to four (4) hours at a single establishment. This was largely due to the time-consuming nature of inventory checks.

76.     Traffic also contributed to the overtime that Plaintiff and other IOs regularly worked. To complete their routes, it was required that Plaintiff and others similarly situated travel

15

throughout various regions within the D.C. metropolitan area. Traffic was often a significant cause for delay. It would often take Plaintiff and other IOs long-standing periods to arrive to their various stores.

77.     Once at the store, Plaintiff and other IOs would perform other routine tasks. This included stocking display shelves and removing old or stale products from the shelves. Plaintiff and other IOs were also regularly required to reorganize display shelves. All of these duties were carried out according to Defendant's explicit instructions. The instructions centered on what would be best for Defendant's business. Plaintiff and other IOs were demanded to follow these instructions precisely. For instance, Plaintiff can recall that for particular stores on his route, Defendant would issue a diagram reflecting the exact manner in which its bread products were to be displayed.

78.     Defendant would also determine what products to stock at each store. Similar to when Plaintiff was an employee, Defendant would ultimately decide what products to order. Defendant would also determine the quantity of all orders. Without consulting Plaintiff and other IOs, Defendant regularly modified the amount of products within their inventories. Defendant regularly adjusted Plaintiff's and other IOs' orders based on the terms of the contract Defendant entered into with customers.

79.     Defendant would separately negotiate the contract with customers. Plaintiff and other IOs were not involved with these negotiations. Their input was never sought. For instance, Plaintiff can recall Defendant entering into an agreement with Giant stores that resulted in significantly decreasing the commissions Plaintiff earned from delivering Giant products. At the time Defendant negotiated the contract with Giant, Plaintiff and other IOs did not participate. Defendant made the ultimate decision to modify the contract's terms. This decision had the

16

negative effect of severely decreasing Plaintiff's profits. In turn, Defendant received a pecuniary gain.

80.     Defendant's agents exercised ultimate authority over what Plaintiff delivered. On many occasions, Plaintiff can recall having his orders adjusted in the handhelds, which Defendant's agents could access remotely. The adjustments were made without Plaintiff's input or consent. Having remote access to the handhelds enabled Defendant to change and adjust orders without having to contact Plaintiff.

81.     The orders were adjusted for a number of reasons. Defendant would routinely adjust Plaintiff's orders as a result of low sales. Defendant consistently monitored the frequency with which products were sold. Defendant would adjust Plaintiff's and other IOs' orders if the sale of a product was not sufficiently profitable. The adjustments were consistently made without Plaintiff's knowledge. He had no say in Defendant's decision.

82.     Similar to when they were employees, Defendant's agents would adjust Plaintiff's and other IOs' orders to promote the sale of new products. Defendant wanted to sell more of these products. Defendant would attempt to inundate stores with certain product lines. Selling more of these products would significantly increase Defendant's profits. Whether this would benefit its IOs was not Defendant's concern.

83.     Plaintiff can recall instances when Defendant purposely shortchanged his orders to prevent losses that resulted from Defendant's products not being sold. This would preclude Plaintiff from fulfilling all deliveries on his route, often negatively impacting the relationship between Plaintiff and customers.

84.     Plaintiff can also recall instances when Defendant artificially inflated his orders. This was done for purposes of increasing the amount of a particular product that Defendant wanted

17

to sell. Plaintiff and other IOs were often not able to sell all of these products. This would result in an increase in returns that Plaintiff would have to declare. This in turn would result in deductions to his pay.

85. In theory, Defendant sold Plaintiff and other IOs the products that they would then sell to the stores within their route. This was done under the terms described in the distribution Agreement. However, Defendant would regularly change the terms of the Agreement. Defendant would make these changes without input from the IOs. Plaintiff can recall numerous changes to his and other IOs' compensation plans unilaterally imposed by Defendant.

86. Plaintiff specifically recalls the percentage he received for certain brands being drastically reduced by Defendant. Defendant made this decision entirely on its own. Plaintiff and other IOs were never consulted. No negotiations took place. Those affected were simply offered a one-time payment calculated by Defendant. Plaintiff and other IOs were told they could either "take it or leave it."

87. Defendant made all decisions relating to Plaintiff's and other IOs' method of pay. Defendant maintained control over all aspects of payment. The stores did not pay the IOs directly; Plaintiff and other IOs were paid by Defendant. This was based on a complex system that Defendant created.

88. The products that Plaintiff and other IOs delivered were sold to them on credit. Once the products were sold to the customer, Defendant would pay its IOs a percentage of the sale price. The percentage paid to the IO varied based on the brand and type of product.

89. The percentage would typically range from ten percent (10%) to twenty-five percent (25%) of the price at which it was sold to Defendant's clients. Thus, Plaintiff and other IOs were essentially paid a commission.

18

90. It was difficult for Plaintiff and other IOs to confirm they were being paid correctly. Plaintiff and other IOs never received earnings statements. They were never issued balance sheets. This made it difficult for them to tell whether they received a percentage of all products they delivered. They also could not ascertain whether the percentages they did receive were correct.

91. Plaintiff and other IOs were also subject to regular deductions. These deductions were difficult to track. Defendant failed to implement a system that effectively explained the reasons for the deductions.

92. Many of the deductions were for reasons outside of Plaintiff's control. For instance, it was common for a store to report an "overage," which meant that it sold more products than had been delivered. Stores would also report lost products, or products that were either stale or unused. The resulting losses were deducted from the payments made to Plaintiff and other IOs. They had to cover this financial burden entirely on their own. This was despite the fact that the overages, losses and returns were often caused by Defendant over-saturating their orders. The decision to increase Plaintiff's and other IOs' orders was made entirely by Defendant.

93. Defendant exercised ultimate authority over the products Plaintiff and other IOs purchased. There were times when Defendant's agents would tell an IO to deliver a product to a store that explicitly refused to accept the product previously. When stores refused to accept a delivery, the losses were charged to the IO. Defendant did not suffer any repercussions.

94. Due to Defendant's continued interference, Plaintiff and other IOs ultimately had no control over their profits. This caused Plaintiff and other IOs to suffer substantial economic harm.

95. Defendant rarely suffered harm. By first "selling" the products to its IOs, Defendant would always recover a proportional amount. This protected Defendant from suffering

19

the financial losses that Plaintiff and other IOs were exposed to. This includes the losses that resulted from a customer not buying all of the products that IOs were required to "purchase" from Defendant.

96.    Defendant also determined the wholesale and retail price of all products. Defendant would often hold special sales in conjunction with the retail stores where the products were sold. It was routine for Defendant to offer stores a discount in hopes of incentivizing the purchase of more of its products. Plaintiff and other IOs had no involvement with these arrangements.

97.    The discounts would often cause Plaintiff and other IOs to lose money. They were still required to purchase the bread from Defendant at full price, despite the fact they would ultimately receive less compensation due to the customer only paying Defendant the sale price.

98.    Defendant also had the power to unilaterally alter the price at which a given product was sold to IOs without having to modify the price that IOs were permitted to sell the product to customers. Accordingly, Defendant could substantially reduce Plaintiff's and other IOs' income without impacting its own relationships. Defendant frequently entered into these types of arrangements with customers. At no point did the IOs have a say in these arrangements. This made it impossible for IOs to control their supposed business.

99.    Plaintiff's and other IOs' investment in their business was relatively low compared to Defendant. Defendant provided storage space at its warehouses and depots. Defendant provided administrative and logistical assistance.    Defendant was responsible for all advertisements and promotional material. Defendant was involved with almost every aspect of Plaintiff's business. Defendant's involvement was for its own pecuniary gain.

20

100. Due to Defendant's persistent involvement, Plaintiff and other IOs could not run their business as they chose. Plaintiff was in a permanent working relationship with Defendant. Neither Party had any intention of terminating what was essentially an indefinite contract.

101. Defendant did not allow Plaintiff or other IOs to deliver similar products for other companies. Plaintiff and other IOs could not seek other business relationships. Most, if not all, IOs worked solely for Defendant. Because of the schedules they had to follow, they did not have time to pursue work from other businesses.

102. Plaintiff and the other IOs were an integral part of Defendant's business. Without the labor of Plaintiff and other IOs, Defendant would have no way to distribute its products. Defendant's entire business depended on its IOs.

103. At all times relevant to this Complaint, Defendant controlled the administration of its business.

104. Defendant was actively engaged in the management, direction and control of Plaintiff and other IOs.

105. Defendant had the authority to control Plaintiff's and other IOs' tasks. Defendant utilized the threat of termination or "breach" to control their daily activities.

106. Breach was frequently threatened by Defendant. The implication that Plaintiff's and other IOs' routes could be taken away at any time left them powerless. This enabled Defendant to exert control over their work.

107. Plaintiff's prior relationships with Defendant's agents remained unchanged. Even after the time they were transitioned to IOs, Defendant's agents continued to exercise their supervisory roles. These roles enabled Defendant's agents to compel the compliance of the IOs. Plaintiff and other IOs continued to submit to Defendant's demands.

21

108. Following their transition to IOs, Plaintiff and others similarly situated still felt as if their positions were the same. Their inventories were still under Defendant's control. Defendant continued to manage all aspects of their routes. The relationship between Plaintiff and their supervisors remained the same. Defendant's agents continued to direct their work.

109. The level of control Defendant maintained over Plaintiff and other IOs caused them substantial economic harm. For instance, Plaintiff and other IOs had no power to increase the route's value. Only Defendant had that power.

110. Therefore, Defendant was often able to recover its routes without having to pay its IOs anything. Many IOs were no longer able to afford their routes. This resulted from the high costs associated with maintaining their routes combined with the numerous economic challenges caused by Defendant's behavior.

111. All of Defendant's IOs have been victimized by Defendant's unlawful practices. Consequently, on behalf of himself and all those similarly situated, Plaintiff seeks the compensatory and statutory damages to which he and the other IOs are entitled, in addition to all other available relief through this Complaint.

## COLLECTIVE/CLASS ACTION ALLEGATIONS UNDER DISTRICT OF COLUMBIA LAW

112. Plaintiff brings this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure and D.C. Code Ann. § 32-1308(a)(1)(C)(v).

113. Plaintiff brings this action on behalf of himself and other current and former employees that served as IOs for Defendant and (a) were subject to denial of overtime wages under DCMWRA for all hours worked over forty (40) in a single workweek; and (b) at whose expense Defendant was unjustly enriched by retaining the benefits of the IOs' labor while failing to

22

compensate the IOs as employees, or bear the expenses that Defendant would have otherwise had

to pay but-for the independent contractor classification.

114.   The D.C. law classes Plaintiff seeks to represent are defined as:

*DCMWRA Collective/Class*

>All individuals who are or were employed by Defendant as IOs for
>any period ranging from three (3) years prior to the filing of the
>instant Complaint to the present and who were not paid an overtime
>rate of "time and a half" their regular rate for all hours worked over
>forty (40) in a workweek.

*D.C. Unjust Enrichment ("UE") Class*

>All individuals who are or were employed by Defendant as IOs for
>any period ranging from three (3) years prior to the filing of the
>instant Complaint to the present and at who's expense Defendant
>was unjustly enriched by retaining the value of the labor performed
>by its IOs without compensating them as employees.

115.   *Numerosity*: The individuals in the classes are so numerous that joinder of all

members is impracticable.  Although the precise number of such individuals is currently unknown,

the class includes dozens of current and former employees who are readily identifiable through

Defendant's pay records.  These employees had routes located within the District of Columbia and

performed the majority of their labor there.

116.   *Commonality*: There are questions of law and fact common to the classes.  Among

the common questions of law and fact applicable to Plaintiff and the classes are:

a.   Whether the DCMWRA Class is similarly situated because they were

subject to Defendant's common policy and practice of not paying overtime ("time-and-a-

half") pay to its employees.

b.   Whether Defendant employed the DCMWRA Class within the meaning of

DCMWRA;

23

c. Whether Defendant violated DCMWRA by failing to pay Plaintiff and the DCMWRA Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

d. Whether Defendant was unjustly enriched at the D.C. UE Class' expense under D.C. common law;

e. Whether Defendant's violations were willful; and

f. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated, statutory, interest, costs and attorneys' fees.

117. *Typicality*: Plaintiff's claims are typical of those of the classes. Each and every class member of the DCMWRA class work or worked as a IO on a route sold to them by Defendant. The requirements of their position caused each and every DCMWRA Class member to work substantially over forty (40) hours each week. It was Defendant's common policy not to compensate its employees for working these overtime hours. Defendant's unlawful practices were well documented. Defendant also failed to pay Plaintiff and other members of the D.C. UE Class the benefits it provides to all employees, as well as its portion of the contributions required under the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. § 3101. Therefore, Defendant was unjustly enriched at the expense of the D.C. UE Class.

118. *Adequacy*: Plaintiff will fully and adequately protect the interests of the classes. He seeks the same recovery as the classes, predicated upon the same violations of the law and the same damage theory. Plaintiff has also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the classes.

24

119.   *Predominance*: The common issues of law and fact predominate over any individual issues. Each DCMWRA Class member's claim is controlled by the District of Columbia's wage and hour statutory scheme and one (1) set of facts. Each D.C. UE Class member's claim is controlled by D.C. common law and the same set of facts. This is based on Defendant's failure to pay overtime as required by DCMWRA and its unjust enrichment at the expense of the D.C. UE Class. Similarly, the damages are eminently certifiable in that Defendant's records will provide the number of hours each class member worked and the amount and frequency each class member was paid.

120.   This action is maintainable as a class action. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes. This would establish incompatible standards of conduct for Defendant. If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a drain and burden on judicial resources. Accordingly, the Court should certify the proposed class.

## **COUNTS AND VIOLATIONS OF LAW**

### *Count I - Violation of the DCMWRA, D.C. Code Ann. § 32-1003(c): failure to pay overtime wages to Plaintiff and all other individuals added as Parties during the course of this matter*

121.   Plaintiff hereby fully incorporates in this Count all allegations contained within Plaintiff's Complaint.

122.   Pursuant to the DCMWRA, D.C. Code Ann. § 32-1003(c), an employer shall not employ an employee for a workweek that is longer than forty (40) hours unless the employer pays the employee at a rate of at least one-and-one-half (1.5) times the regular rate at which the employee is employed for all hours worked over forty (40) in a single workweek.

25

123. Defendant is a corporation and therefore qualifies as an employer under the DCMWRA, D.C. Code Ann., § 32-1002(3).

124. Plaintiff is an employee of Defendant. Defendant suffered and/or permitted Plaintiff to work as required in order for Plaintiff to have been found to be employed by Defendant, D.C. Code Ann., § 32-1002(1).

125. Plaintiff does not fit any of the exemptions to the DCMWRA, D.C. Code Ann., § 32-1002(2).

126. During the relevant limitations period, Plaintiff worked over forty (40) hours during many individual workweeks. Plaintiff has not received compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

127. Defendant willfully and intentionally did not compensate Plaintiff for the overtime wages he is owed.

128. There is no bona fide dispute that Plaintiff is owed overtime wages for work performed for Defendant.

129. The relevant limitations period for violations of the DCMWRA is three (3) years from the date the cause of action accrued, or the last occurrence. D.C. Code Ann. § 32-1308(c)(1). However, that period is tolled during any period where an employer fails to provide a complainant employee with constructive or actual notice of the employee's rights under the DCMWRA, D.C. Code Ann. § 32-1308(c)(2)(B). From the outset of his employment, Plaintiff has never received notice, constructive or actual, of his DCMWRA rights to receive overtime premiums. In fact, Plaintiff and members of the putative DCMWRA Class were erroneously told they were exempt from such rights and guarantees. Defendant failed to provide Plaintiff and members of the putative DCMWRA Class with notice of their DCMWRA rights, thereby tolling the relevant limitations

26

period for the entirety of Plaintiff's and members of the putative DCMWRA Class' employment period.

130. All members of the putative DCMWRA Class are similarly situated to Plaintiff; all members (1) were employed by the same employer to perform the same duties as Plaintiff and were subject to the same policies and procedures, (2) allege the same failure of Defendant to compensate them at the appropriate overtime rate for hours worked over forty (40) in a workweek, (3) seek the same relief in the form of unpaid wages owed to them for hours worked over forty (40) in any individual workweek, liquidated damages equal to treble the amount of overtime wages owed, reasonable attorneys' fees and costs and (4) any other relief the Court deems appropriate.

131. Under the DCMWRA, Plaintiff and all members of the putative DCMWRA Collective and/or Class are entitled to: (1) additional wages from Defendant for all overtime hours worked during the relevant limitations period at a rate of one and one-half (1.5) times Plaintiff's and each member of the Collective and/or Class' respective regular hourly rate, (2) liquidated damages equal to treble the amount of overtime wages owed, (3) reasonable attorneys' fees and costs, and any other relief the Court deems appropriate.

## COUNT II - *Unjust enrichment under D.C. common law.*

132. Plaintiff hereby fully incorporates and restates in this Count all allegations contained within Plaintiff's Complaint.

133. Plaintiff performed the work of an employee and was treated as such.

134. Plaintiff conferred the benefits of an employee's labor upon Defendant. These benefits include delivering Defendant's product to its customers; servicing Defendant's customers through the arrangement of Defendant's products in the customers' stores and display areas; servicing Defendant's customers through the removal of stale or defective products; and

27

advertising Defendant's products through wearing Defendant's uniform and displaying Defendant's decal on its vehicle.

135.   These benefits are consistent with those Defendant could expect to receive from its employees.

136.   Defendant maintained control over the manner in which Plaintiff conferred the benefits described above.

137.   Defendant benefitted from controlling the manner in which it received the fruits of Plaintiff's labor.

138.   These conditions make clear that under D.C. Common Law, Plaintiff was an employee of Defendant:

  i.   Defendant controlled Plaintiff's duties, which include the customers he serviced, the products he delivered and the time he had to obtain the products for delivery;

 ii.   the service Plaintiff provided was the pinnacle of Defendant's business, which was the delivery of bread products;

iii.   Defendant provided the goods Plaintiff delivered;

 iv.   Defendant provided the customers Plaintiff serviced;

  v.   Defendant provided the vehicle Plaintiff used to service his customers;

 vi.   In exchange for his services, Defendant directly paid Plaintiff a commission rate based on the type and quantity of the product delivered;

vii.   Plaintiff did not have entrepreneurial opportunity for gain or loss, significant or otherwise; and

viii.   Defendant did not permit Plaintiff to make or influence the practices that would affect the manner in which he provided his services.

28

139.    Defendant maintained a similar amount of control over its employees as it did over Plaintiff.

140.    Defendant enjoyed the same benefits from the labor of its employees as it did from Plaintiff's labor.

141.    Defendant did not provide Plaintiff the benefits it typically provides to its employees. Defendant provides company-sponsored health insurance, company contributions into retirement accounts, costs associated with Defendant's equipment, reimbursements for expenses incurred as a result of the performance of their duties, as well as other benefits commonly associated with an employment relationship.

142.    Defendant failed to provide Plaintiff with the employee benefits he should have been entitled to.

143.    Defendant also did not provide the employer's portion of the contributions required by the Federal Insurance Contribution Act ("FICA"), 26 U.S.C. § 3111. As a result, Plaintiff was required to bear the full tax burden imposed under the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1, *et seq.*

144.    Defendant retained the funds that would have otherwise gone towards making these payments.

145.    Defendant's retention of these funds cannot be justified.

146.    Defendant was enriched through its unjust retention of these funds. Plaintiff is therefore entitled to recover compensatory damages in the amount of those funds unjustly retained.

147.    Defendant exercised the same control over its other IOs as it did over Plaintiff.

148.    Defendant's other IOs also did not have entrepreneurial opportunity for gain or loss.

29

149.   Therefore, all members of the D.C. UE Class are entitled to the same recovery as

Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and others similarly situated, prays for the

following relief:

a) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this
   action as a District of Columbia state law class action on behalf of Plaintiff and all
   members of the proposed DCMWRA and UE classes;

b) Designating the named Plaintiff to act as class representative on behalf of all members
   of the classes;

c) Judgment against Defendant for its failure to pay Plaintiff, the members of the
   DCMWRA Class, and all those appropriately joined to this matter in accordance with
   the standards set forth by the DCMWRA;

d) Judgment against Defendant for its unjust retention of the benefits owed to Plaintiff and
   members of the UE Class, in violation of D.C. common law;

e) Judgment against Defendant and classifying its conduct as willful and not in good faith;

f) Judgment against Defendant and classifying Plaintiff and the members of the classes as
   employees entitled to the filing of accurate information returns as required by the IRC;

g) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiff,
   members of the DCMWRA Class and all those appropriately joined to this matter
   calculated at a rate that is not less than one and a half (1.5) times Plaintiff's and others'
   respective regular hourly rate for all overtime hours worked;

h) An award of liquidated damages equal to double or treble the total amounts of unpaid
   wages owed to Plaintiff, members of the DCMWRA Class, and all those appropriately
   joined to this matter, whichever is deemed just and equitable by this Honorable Court;

i) An award of compensatory damages in the amount of the value of the benefits unjustly
   retained by Defendant at the expense of Plaintiff, members of the UE Class and all those
   appropriately joined to this matter;

j) In accordance with District of Columbia common law, an award of punitive damages in
   an amount to be determined by this Honorable Court or a Jury;

30

k) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

l) Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

m) All further relief deemed just and equitable by this Honorable Court.

## **REQUEST FOR JURY TRIAL**

Plaintiff requests that a jury of his peers hear and decide all possible claims brought on

behalf of himself and those similarly situated.

Respectfully submitted,

*/s/ Robert J. Leonard*

Robert J. Leonard, Esq. (1031023)
rleonard@nicholllaw.com
Benjamin L. Davis, III, Esq.[3]
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201

---

[3] A motion for Benjamin L. Davis, III's admission, *pro hac vice* to this Honorable Court will be filed with concurrently with this Complaint.

31



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Micheal Miles
_____
                                    Plaintiff

vs.                                                    Case Number  **2017 CA 006131 B**

Schmidt Baking Company, Inc.
_____
                                    Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Robert J. Leonard
_____
Name of Plaintiff's Attorney

36 South Charles Street, Suite 1700
_____
Address
Baltimore, Maryland 21201

410-244-7005
_____
Telephone

*Clerk of the Court*

By _____
                          Deputy Clerk

Date _____  **09/07/2017**

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                    CASUM.doc





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Teléfono: (202) 879-1133

_____
                          Demandante

        contra

                                          Número de Caso: _____

_____
                          Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____          _SECRETARIO DEL TRIBUNAL_
Nombre del abogado del Demandante

                                          Por: _____
_____
Dirección                                           Subsecretario

                                          Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO_.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Micheal Milles

Case Number: 2017 CA 006131 B

vs

Date: 8/31/17

Schmidt Baking Company, Inc.

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)*<br>Robert J. Leonard | Relationship to Lawsuit |
| --- | --- |
| Firm Name:<br>Law Offices of Peter T. Nicholl | ☑ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>410-244-7005          1031023 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury      ☑ 6 Person Jury      ☐ 12 Person Jury

Demand: $_____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____      Judge: _____      Calendar #:_____

Case No.:_____      Judge: _____      Calendar#:_____

---

NATURE OF SUIT:      *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

| | | |
| --- | --- | --- |
| ☐ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☑ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration<br>Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**

| | | |
| --- | --- | --- |
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☐ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
   (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
   (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
   Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
   Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
   Judgment [ D.C. Code §
   2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
   42-3301, et seq.)

- ☐ 21 Petition for Subpoena
   [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
   (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

9/31/17
Date

CV-496/ June 2015



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

MICHEAL MILLES
Vs.                                    C.A. No.      2017 CA 006131 B
SCHMIDT BAKING COMPANY, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge FLORENCE Y PAN
Date:  September 6, 2017
Initial Conference: 9:30 am, Friday, December 15, 2017
Location:  Courtroom 415
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue NW**
**Washington, D.C. 20001**

**November 16, 2017**

CASE NAME: MICHEAL MILLES Vs. SCHMIDT BAKING COMPANY, INC.

CASE NUMBER: 2017 CA 006131 B

## NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

Mr BRUCE H H POWELL
LAW OFFICES OF PETER T NICHOLL
36 S CHARLES STREET
BALTIMORE, MD 21201

2017 CA 006131 B

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue NW**
**Washington, D.C. 20001**

**November 16, 2017**

CASE NAME: MICHEAL MILLES Vs. SCHMIDT BAKING COMPANY, INC.

CASE NUMBER: 2017 CA 006131 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

AMBER JACKSON
100 East Pratt Street
26th Floor
BALTIMORE, MD 21202

2017 CA 006131 B

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue NW**
**Washington, D.C. 20001**

**November 16, 2017**

CASE NAME: MICHEAL MILLES Vs. SCHMIDT BAKING COMPANY, INC.

CASE NUMBER: 2017 CA 006131 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

ROBERT J LEONARD
Law Offices of Peter T. Nicholl
36 S. Charles Street, Suite 700
BALTIMORE, MD 21201

2017 CA 006131 B

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

CANOR

**THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**
**500 Indiana Avenue NW**
**Washington, D.C. 20001**

November 16, 2017

CASE NAME: MICHEAL MILLES Vs. SCHMIDT BAKING COMPANY, INC.

CASE NUMBER: 2017 CA 006131 B

# NOTICE OF REMOVAL

This case has been removed to the U.S. District Court for the District of Columbia. Any unresolved motion filed in this case prior to its removal is moot as of the date of this notice. Should the U.S. District Court remand the case back to this Court, moving party may request reinstatement of a motion filed prior to removal of the case by filing a praecipe requesting that the named motion(s) be reinstated. A Certificate of Service to all parties must accompany the praecipe.

**NO FURTHER PLEADINGS WILL BE ACCEPTED FOR FILING IN THE SUPERIOR COURT AT THIS TIME.**



D. C. Superior Court
500 Indiana Avenue NW
Room JM-170
Washington D.C. 20001

First Class Mail
U. S. Postage
Paid
Washington, D.C.
Permit No. 1726

BENJAMIN L DAVIS III
THE LAW OFFICES OF PETER T. NICHOLL
36 S CHARLES STREET, SUITE 1700
BALTIMORE, MD 21201

2017 CA 006131 B

CANOR